**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

IN RE:

BTB REFINING, LLC,                                 CASE NO. 14-26919-EPK

     Alleged Debtor.                              Involuntary Chapter 7

_____/

**BTB REFINING, LLC'S MOTION**
**TO DISMISS INVOLUNTARY PETITION**

     BTB Refining, LLC ("BTB") moves pursuant to 11 U.S.C. §§ 303(j) and 305(a)(1) for an order dismissing this improvidently filed involuntary bankruptcy case. The case should be immediately dismissed because (1) the primary petitioning creditor – Sargeant Trading, Ltd. ("Sargeant Trading") – is disqualified from filing an involuntary bankruptcy petition because its alleged debt is subject to bona fide dispute; (2) BTB is generally paying its undisputed debts as they come due, on terms acceptable to its creditors; and (3) in any event, BTB is prepared to immediately pay all undisputed, bona fide claims for which it has not already reached agreed and acceptable payment terms. Such claims total approximately $172,000, and BTB has placed sufficient funds in its attorneys' trust account ready to start making payments acceptable to the holders of those claims immediately upon the entry of a dismissal order. Indeed, such payment arrangements were already being made when Sargeant Trading --- to advance the litigation agenda of its principals --- improvidently and improperly orchestrated the filing of this petition.

## BACKGROUND

The involuntary petition is the latest in a string of litigation tactics engaged in by Harry Sargeant, Jr. and his sons James and Daniel (the "Sargeants") and entities they control, in a long-running dispute between the Sargeants and BTB, which is owned by Harry Sargeant, III ("Sargeant III"). This Court already has some familiarity with that saga from its experience with the voluntary Chapter 11 case filed by Trigeant, Ltd. ("Trigeant"), in an effort to exercise control over a refinery property located in Corpus Christi, Texas. *In re Trigeant, Ltd.*, Case No. 13-38580-EPK.

On April 9, 2014, this Court dismissed Trigeant's grossly administratively insolvent case, with prejudice until the issuance of a mandate by the Fifth Circuit Court of Appeals in the pending *PDVSA Petroleo, S.A. v. BTB Refining, LLC* litigation relating to BTB's foreclosure on the Refinery.[1] Aside from the abortive *Trigeant* bankruptcy,[2] the Sargeants and entities they control are engaged in other litigation on multiple fronts against Sargeant III and related entities.[3]

---

[1] On June 5, 2014, PDVSA and BTB filed a joint motion to dismiss the appeal based on a settlement that they had reached, and an order dismissing the appeal was entered on June 6, 2014.

[2] Since this Court dismissed its Chapter 11 case, Trigeant has conducted no business operations at the Refinery, has had utility services to the property cut off due to non-payment, has refused to provide BTB with proof of insurance, has refused to permit BTB to inspect its collateral, and has made no payments on the $23 million debt secured by BTB's lien on the Refinery property (the interest accrual for which is approximately $270,000 per month).

[3] That litigation includes: (1) the adversary proceeding filed in this Court in the now-dismissed Trigeant bankruptcy case against BTB for purported violations of the automatic stay, *Trigeant, Ltd. v. BTB Refining, LLC*, Adv. No. 14-01335-EPK; (2) BTB's action in Harris County, Texas against Trigeant, the Sargeants and others for breach of contract, tortious interference, negligent misrepresentation, fraud and conspiracy, *BTB Refining, LLC v. Trigeant, Ltd., et al.*, Cause No. 2013-38405; (3) BTB's action in Montgomery County, Maryland against Trigeant for a declaration of rights with respect to ownership interests in Trigeant, *BTB Refining, LLC v. Trigeant Holdings, Ltd., et al.*, Civil Action No. 378773-V; (4) Dan Sargeant's action against

2

The Sargeants, through Sargeant Trading, are the moving force behind this involuntary petition against BTB. Sargeant Trading asserts a claim – which it does not own – for $5,264,002.72 for "unpaid asphalt." The claims of the other three petitioning creditors total, collectively, $55,882.46 – approximately 1% of Sargeant Trading's disputed claim. Since BTB holds a $23 million lien against another entity controlled by the Sargeants – Trigeant –, their motivation for interfering with BTB's administration of its assets is self-evident. The petition was improperly filed and, perversely, will frustrate rather than facilitate the prompt payment of BTB's legitimate creditors.

---

Sargeant III and others in Palm Beach County, Florida asserting claims for breach of contract, breach of fiduciary duty, conversion, and accounting, *Daniel Sargeant v. Harry Sargeant III, et al.*, Case No. 2013CA007925 XXXX AN;   (5) Trigeant's action in Nueces County, Texas against BTB seeking to quiet title to the Refinery property, *Trigeant, Ltd. v. BTB Refining, LLC*, Cause No. 2014DCV-2966-H.  BTB has moved in a pending action– *PDVSA Petroleo, S.A. v. Trigeant, Ltd., et al.*, Case No. 2:09-CV-0038 in the U.S. District Court for the Southern District of Texas – to enjoin Trigeant's prosecution of that quiet title action as an improper end-run on the District Court's jurisdiction with regard to BTB's lien on the Trigeant Refinery property; (6) *Harry Sargeant, III v. Harry Sargeant, Jr., Sargeant Trading, Ltd., et al.*, Case No. 2013-CA-010505 in Palm Beach County, Florida (claims for accounting and damages relative to Sargeants' looting of assets and profits of Sargeant Trading); and (7) *Harry Sargeant, III, derivatively on behalf of Sargeant Trading, Ltd. v. Harry Sargeant, Jr., Sargeant Trading, Ltd., et al.*, Case No. 2013-CA-010868 in Palm Beach County, Florida (derivative claims on behalf of Sargeant Trading re Sargeants' looting of that company). Copies of the operative complaints in the latter two actions are attached hereto as Exhibits E and F.

## DISCUSSION

**I.      Sargeant Trading's Claim is Subject to Bona Fide Dispute**

      **A.      The Law**

Under 11 U.S.C. § 303(b)(1), in order to file an involuntary petition, a petitioner must hold a claim against the alleged debtor "that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount." The Bankruptcy Code does not define "bona fide dispute," and the majority of courts have adopted an objective test for determining whether a bona fide dispute exists. *In re Vicor Techs.*, 2013 Bankr. LEXIS 1416, *11 (Bankr. S.D. Fla. Apr. 5, 2013) (Kimball, J.); *In re Huggins*, 380 B.R. 75, 83 (Bankr. M.D. Fla. 2007).

A bona fide dispute exists if there is a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to disputed facts. *Huggins*, citing *B.D.W. Assoc. v. Busy Beaver Bldg. Centers, Inc.*, 865 F.2d 65, 66-67 (3d Cir. 1989). The bankruptcy court must determine "whether there is an objective basis for either a factual or legal dispute as to the validity of [the] debt." *Vicor*, *supra*, citing *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987). But the scope of the court's inquiry is limited:

> [T]he statute does not require the court to determine the outcome of any dispute, only its presence of absence. Only a limited analysis of the claims at issue is necessary.

*Id.*, citing *Busick*.

In 2005, 11 U.S.C. § 303 was amended to provide that debts that are disputed as to "liability **_or_** amount" are excluded from consideration of whether the debtor is generally not paying its debts as they become due. As a result, any bona fide dispute as to either liability **_or_** amount of the debt excludes the claim from eligibility as a petitioning creditor, and excludes the debt from consideration as to whether the alleged debtor is generally not paying its debts as they

4

come due. *Id.* at \*13-14 ("It is generally accepted that the 2005 amendment to § 303(b)(1) changed this analysis so that a dispute as to any portion of a claim, even if some dollar amount would be left undisputed, means there is a bona fide dispute as to the amount of the claim and such claim cannot be counted to satisfy § 303(b)(1)."); *see also Credit Union Liquidity Services, L.L.C. v. Green Hills Dev. Co. (In re Green Hills Dev. Co.)*, 741 F.3d 651 (5th Cir. 2014).

Each petitioning creditor must certify, under penalty of perjury, that it is eligible to file the petition under § 303(b) – *i.e.*, that its claim is not subject to a bona fide dispute as to liability or amount.

### B.      Sargeant Trading's Disputed Claim

With respect to Sargeant Trading's claim, that certification was patently false. Sargeant Trading's claim against BTB is supported by two words "unpaid asphalt." The reality, unsurprisingly, is much more complicated, and is intertwined with the ongoing and multifaceted Sargeant family dispute.

International Oil Trading Company, Ltd. ("IOTC") and Sargeant Marine, Ltd. ("SM, Ltd.") are entities that Sargeant III co-owns with a non-family member. In 2004, SM, Ltd. loaned $2.8 million to Sargeant Trading. In 2006, IOTC loaned $4 million to Trigeant Holdings, Ltd. ("Trigeant Holdings"), which in turn owned 100% of Sargeant Trading. In January 2010, Trigeant Holdings spun off Sargeant Trading, which is now owned by Sargeant Jr., Sargeant III, Dan Sargeant and James Sargeant (each of whom owns 25%), which is, not coincidentally, the same ownership structure as Trigeant.

During 2010 and through January 2011, BTB made monthly asphalt purchases from Sargeant Trading, the net balance of which was approximately $5 million. Since BTB (which was owned by Sargeant III) owed roughly the same amount to Sargeant Trading (a company

5

owned by the Sargeant family) as Trigeant Holdings (another company owned by the Sargeant family) owed to IOTC and SM, Ltd. (which were co-owned by Sargeant III), Sargeant III advised Sargeant Trading that the "due to" and "due from" of the Sargeant family companies (Sargeant Trading and Trigeant Holdings) and the Sargeant III companies (BTB, SM, Ltd., and IOTC) should be offset against each other.

In 2011, Sargeant Trading removed the receivable due from BTB from its balance sheet. Sargeant Trading's audited financial statements, signed by Dan Sargeant and Stephen Roos, attest that "in 2011, the Shareholders of the Company [Sargeant Trading] received a deemed dividend of $5,394,003 which arose from a reduction in notes receivable from a related party." *See* attached Exhibit A. The notes to the financial statements further explain:

> As of December 31, 2010, the Company had short and long-term notes receivable totaling $5,475,197 due from a related party under common ownership. The receivable is the result of various 2010 sales transactions between the Company and the related party which arose in the normal course of business. During 2011, the Board of Directors concluded that this Note Receivable should be treated as a deemed dividend to the Company's shareholders.

*See also* attached Exhibit G, which is an excerpt from Sargeant Trading's auditors' 2011 work papers, reflecting both the "deemed dividend" and the "discussion with client" that the claim would be charged off as a bad debt expense, which BTB would "pick up as [cancellation of debt income]."

In other words, there is no longer any debt owed by BTB to Sargeant Trading: that receivable has been removed from Sargeant Trading's books and treated as a deemed dividend to Sargeant Trading's shareholders (*i.e.,* Sargeant III, Sargeant Jr., Dan Sargeant and James Sargeant).

To the extent any debt still even exists, it would be owned by Sargeant Trading's shareholders, not Sargeant Trading, and is subject to bona fide dispute. Clearly, Sargeant III (a 25% shareholder of Sargeant Trading) is not seeking payment of any such debt. Accordingly, there is a dispute as to amount, in that at least 25% of the alleged debt is controlled by Sargeant III who is not claiming such debt to be due.

To the extent that the other shareholders – Sargeant Jr., Dan Sargeant and James Sargeant – should assert any such right to payment, it would also be subject to a bona fide dispute, in that (1) there are still unresolved setoffs with respect to any asserted related party debt owed by BTB; (2) those very same parties are already subject to litigation claims brought by BTB against them for tortious interference, fraud and conspiracy in Harris County, Texas *(see* Plaintiff's First Amended Petition filed in *BTB Refining, LLC v. Trigeant, Ltd., Trigeant L.L.C., Stephen Roos, Harry Sargeant, Jr., Daniel Sargeant, and James Sargeant*, Case No. 2013-38405, a copy of which is attached as Exhibit B) and (3) Sargeant III has a pending individual action against the Sargeants and a pending derivative action brought on behalf of Sargeant Trading against the Sargeants and others *(see* Exhibits E and F).

Tellingly, despite the fact that this alleged $5.2 million claim has allegedly existed for more than three years, the Sargeants --- who are nothing if not litigious --- have never sued BTB on this claim. Instead, as discussed in more detail below, in response to BTB's threat of foreclosure against the Trigeant refinery, the Sargeants have dredged up this claim --- and falsely named Sargeant Trading as its owner --- to advance their defensive litigation purposes in the Texas litigation involving the refinery.

The relationship between Sargeant Trading, BTB, and the various Sargeant family members and their entities is infinitely more complicated than  an overdue invoice for "unpaid

asphalt." Sargeant Trading's claim is subject to a bona fide dispute. Sargeant Trading is thus not qualified to be a petitioning creditor, and the alleged non-payment of its alleged claim is irrelevant to whether BTB is "generally not paying its debts as they become due."

## II.    BTB is Generally Paying its Debts as They Come Due

### A.  The Law

Under 11 U.S.C. § 303(h), the Court may enter an order for relief only if it finds that "the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount. A finding that a debtor is generally not paying its debts "requires a more general showing of the debtor's financial condition and debt structure than merely establishing the existence of a few unpaid debts."  *In re Vortex Fishing Sys.*, 262 F.3d 985, 1027 (9th Cir. 2001) (quoting *In re Dill*, 731 F.2d 629, 632 (9th Cir. 1984)). Courts apply a flexible "totality of the circumstances" test to determine whether a debtor is "generally not paying" its debts, which focuses "on the number of unpaid claims, the amount of the claims, the materiality of nonpayment and the overall conduct of the debtor's financial affairs." *Vicor*, *supra*, at *6, citing *In re Huggins*, 380 B.R. at 83; *see also Fed. Fin. Co. v. Carro*, 2001 U.S. Dist. LEXIS 8854, *21 (S.D. Fla. Feb. 28, 2001) (adopting "flexible totality of the circumstances test" for determining whether alleged debtor is generally not paying its debts as they come due).

A debtor may be generally paying its debts as they come due even if it may have initially defaulted on some of its debts, if it has entered into satisfactory arrangements to pay the creditors. *See, e.g.*, *In re E.S. Prof'l Servs.*, 335 B.R. 221, 224-25 (Bankr. S.D. Fla. 2005), *aff'd*, 2007 U.S. App. LEXIS 24163 (11th Cir. 2007).  In making the determination, the court should "examine the totality of the circumstances, balancing the interests of the [alleged] debtor with

8

those of the creditors." *Id.* at 226, citing *In re Brooklyn Resource Recovery*, 216 B.R. 470, 485 (Bankr. E.D.N.Y. 1997).

Each petitioning creditor must certify, under penalty of perjury, that this condition is satisfied, i.e., that the debtor is not generally paying its *undisputed* debts as they become due." Again, with respect to BTB, that certification by the petitioning creditors in this case is false.

**B.    BTB's Creditors**

Attached hereto as Exhibit C is a schedule of all non-insider creditors who hold undisputed claims against BTB. The list is divided into two schedules. Schedule 1 lists those creditors with whom BTB has already made mutually acceptable payment arrangements (and which are being paid as such debts become due to them under such arrangements), or who are otherwise cooperating with, and not actively asserting payment claims against, BTB.  Schedule 2 lists those creditors with whom there presently are no such arrangements.[4]

Schedule 1 reflects that BTB has mutually acceptable payment arrangements with creditors holding in excess of  $1.24 million in claims. By contrast, Schedule 2 shows that those creditors with whom there are no such arrangements (including the three petitioning creditors other than Sargeant Trading) total less than $172,000 – approximately 12% of BTB's total undisputed claims.  BTB further notes that with the exception of the petitioning creditors other than Sargeant Trading (whose claims total $55,882.46), only sixteen other creditors hold claims exceeding $10,000. Most of the other claims comprising the unpaid debts are for relatively *de minimis* amounts.

---

[4]  Excluded from this list are five creditors whose claims, in the aggregate amount of approximately one million dollars, are subject to bona fide dispute. Under §303(h), disputed claims are not considered for purposes of determining whether a debtor is generally paying its debts as they come due.

Thus, the overwhelming majority of BTB's undisputed creditors are being paid according to terms that they deem acceptable. The only debts that are not being paid on mutually acceptable terms are (1) claims that are subject to bona fide dispute, such as Sargeant Trading; and (2) a small percentage of undisputed claims that BTB was in the process of resolving at the time the involuntary petition was filed, and that will be paid in full immediately upon entry of an order dismissing this case.

### III.    BTB is Willing and Able to Pay Its Undisputed Claims

As detailed above, the claims which are not already subject to mutually acceptable payment arrangements total approximately $172,000.00. BTB was in the process of making arrangements to pay off these claims when this involuntary petition was precipitously filed. ***BTB has placed in its undersigned attorneys' trust funds sufficient to make full payment to the creditors in Schedule 2 of Exhibit C upon the entry of an order dismissing this involuntary petition.*** The involuntary bankruptcy petition that the Sargeants have orchestrated is actually a barrier to the payment of BTB's legitimate creditors.

BTB further notes, as this Court already knows from the Trigeant bankruptcy, that BTB holds an asset – a $23 million lien on the Trigeant Refinery – that has a greater value than all the claims, both disputed and undisputed, asserted against BTB. That lien is secured by Trigeant's property, and the Sargeants, as the primary owners of both Trigeant and Sargeant Trading, have ample incentive to continue to interfere with BTB's liquidation of that asset. As discussed in greater detail below, this involuntary petition was not filed to enable creditors to get paid – it was filed to advance the litigation interests of the Sargeants. Indeed, any financial disruption that BTB has experienced is entirely the result of the Sargeants' efforts to obstruct BTB's enforcement of its rights with respect to the Trigeant collateral.

10

IV.   **The Petition Should be Dismissed and the Petitioners Should be Required to Pay BTB's Costs and Fees, and as to Sargeant Trading, Actual or Punitive Damages**

   **A.  This Court Should Dismiss this Case or, Alternatively, Abstain**

If the requirements of 11 U.S.C. § 303 are not satisfied, then the Court may not order relief against the debtor and must dismiss the petition. 11 U.S.C. § 303(h). Alternatively, under 11 U.S.C. § 305(a), the court may dismiss a case at any time if the interests of creditors and the debtor would be better served by such dismissal.

In evaluating the propriety of an involuntary petition, the court must keep in mind the "extreme nature" of the remedy, which has "serious consequences" to an alleged debtor. *E.L. Prof'l Servs.*, 335 B.R. at 225:

> A debtor hauled into bankruptcy court involuntarily risks the loss of credit, the inability to transfer assets in the normal course of business, as well as public embarrassment, and is often rendered incapable of conducting its business affairs. As such, courts have an obligation to carefully scrutinize the actions of a petitioning creditor in order to assure that an order for relief is only entered in such cases where it is truly appropriate.

*Id.*, citing *In re Smith*, 243 B.R. 169 (Bankr. N.D. Ga. 1999). Furthermore, the court should consider whether bankruptcy will benefit or hinder the majority of creditors. *Id.* at 226: "The creditor body as a whole would not benefit, and the majority of other creditors (if not all other creditors) do not wish to see the debtor placed into an involuntary bankruptcy."

In addition, 11 U.S.C. § 305(a)(1) grants the court broad authority to dismiss or suspend proceedings in a case if the interests of creditors and the debtor would be better served by such dismissal or suspension. *In re Aerovias Nacionales de Colombia S.A. Avianca*, 303 B.R. 1 (Bankr.S.D.N.Y.2003). The test under § 305(a)(1) is whether both the creditors and the debtor would be better served by a dismissal. *See In re Beacon Reef Ltd. Partnership*, 43 B.R. 644

11

(Bankr. S.D. Fla.1984) (court abstained where  (1) involuntary petition amounts to no more than claim made by single disgruntled investor, limited partner, against debtor partnership and (2) adequate remedies of state law pursuant to foreclosure proceedings and partnership agreement exist to address claims of limited partner.)

The House and Senate Reports on Section 305(a) relate that the court may dismiss or suspend if an arrangement is already being worked out by creditors and the debtor outside of court, the creditors' rights are not being prejudiced in the arrangement, and the involuntary case has been instituted "by a few recalcitrant creditors to provide a basis for future threats to extract full payment." *See also In re Sun World Broadcasters, Inc.*, 5 B.R. 719 (Bankr. M.D. Fla. 1980) (quoting House Report No. 95-595, 95th Congress, 1st Session (1977) 325; Senate Report No. 95-989, 95th Congress, 2nd Session (1978) 35).

"In determining whether abstention under § 305(a) is appropriate, courts must look to the facts of the individual cases." *In re 801 S. Wells St. Ltd. Pshp.*, 192 B.R. 718, 723 (Bankr. N.D. Ill. 1996); *In re Rcm Global Long Term Capital Appreciation Fund*, 200 B.R. 514, 524 (Bankr. S.D.N.Y. 1996). While no uniform test has emerged, courts have found a number of factors that aid in the analysis,  which are set out in the *801 S. Wells* case.

Some courts utilize a three-prong test authorizing abstention when (1) the petition was filed by a few recalcitrant creditors and most creditors oppose the bankruptcy; (2) there is a state insolvency proceeding or an out-of-court arrangement pending; and (3) dismissal is in the best interest of the debtor and all creditors. *Id.* at 723.  In *In re R.V. Seating, Inc.*, 8 B.R. 663, 665 (Bankr. S.D. Fla. 1981), Judge Weaver relied on the third prong to dismiss an involuntary Chapter 7 petition. In that case, the court considered the economy of bankruptcy administration and the adequacy of the remedies available to the petitioning creditor under Florida law in

12

determining that dismissal was in the best interest of the debtor and all creditors. *Id.; see also In re Sun World Broadcasters, Inc.*, *supra*, 5 B.R. at 721-722 (considered judicial economy and efficiency of administration in concluding that the interests of the creditors and debtor would best be served by an abstention).

Here, the petitioners have not satisfied the requirements of 11 U.S.C. § 303, because BTB is in fact generally paying its undisputed debts as they come due. BTB is on good terms with the overwhelming majority of its undisputed creditors, who hold approximately $1.125 million in claims. There are only approximately $172,000 in other undisputed claims which have not been paid or satisfactorily resolved. Moreover, other than the three petitioning creditors who total $55,882.46, there are only sixteen individual creditors owed more than $10,000. As stated above, BTB was in the process of making arrangements to pay all of these claims when the involuntary petition was filed, and is willing and able to do so immediately. A bankruptcy will frustrate, rather than facilitate, the payment of BTB's legitimate creditors.

**B.  This Court Should Sanction Sargeant Trading and the Sargeants**

If the Court dismisses an involuntary petition other than on consent of all petitioners and the debtor, and if the debtor does not waive its rights, then the Court may grant judgment in favor of the debtor and against the petitioners for the debtor's costs and a reasonable attorney's fee. As to any petitioner that filed the petition in bad faith, the Court may grant judgment for any damages proximately caused by the filing or punitive damages. 11 U.S.C. § 303(i).

As noted above, BTB has made provision for all of its undisputed creditors, and is generally paying its debts as they come due. The fact that BTB has any creditors *at all* is the direct result of Trigeant's failure to make any payments in respect of its loan payable to BTB in the approximate principal amount of $23 million, or continually accruing interest payments of

approximately $270,000 per month.  BTB's "debts" --- for which it has made adequate provision --- are the direct consequence of the Sargeants' conduct.

But it is even worse than that. This involuntary petition is an improper defensive litigation tactic by Trigeant and the Sargeants: In its ongoing, years-long attempt to stave off BTB's foreclosure of its first lien on the refinery, Trigeant recently filed a "quiet title" action in Texas state court, in which it takes the position that the statute of limitations bars enforcement of BTB's first lien on the refinery. BTB has moved the U.S. District Court for the Southern District of Texas (Ramos, J.) (whose now-final judgment established BTB's lien as a valid and enforceable first lien on the refinery), to enjoin the quiet title action.

Two days ago, on August 4, 2014, Trigeant took the position that the Sargeants' instant involuntary petition against BTB triggers the automatic stay, which, in turn, bars *BTB's* request that Judge Ramos enforce her judgment and enjoin Trigeant's frivolous "quiet title" action. *See* attached Exhibit D.  This Court should not condone --- and should affirmatively punish --- Trigeant's latest attempt to abuse this Court's jurisdiction.

BTB does not waive its right to judgment under 11 U.S.C. § 303(i), and requests that the Court grant judgment in its favor against the petitioners, jointly and severally, for its costs and attorneys' fees incurred in defending this petition. BTB further requests that the Court grant judgment against Sargeant Trading, and any persons acting in concert with it, for actual and punitive damages for filing this petition in bad faith. The true motivation for Sargeant Trading's orchestration of this involuntary bankruptcy has nothing to do with any legitimate effort to collect on a claim for "unpaid asphalt" – a claim that Sargeant Trading, for good reasons, took off its books in 2011. Rather, this is simply an ongoing continuation of the Sargeants' litigation

14

campaign against BTB and Sargeant III, and in particular, an effort to frustrate BTB's enforcement of its lien against the Trigeant property. It has no place in bankruptcy court.

## **CONCLUSION**

BTB respectfully requests that the Court: (1) dismiss this involuntary petition; (2) grant judgment against the petitioners, jointly and severally, for BTB's costs and attorneys' fees incurred in defending this involuntary petition; and (3) grant judgment against Sargeant Trading, and any persons found to be acting in concert with it, for actual and punitive damages for filing this involuntary petition in bad faith.

DATED:  August 6, 2014                    Respectfully submitted by:

*/s/ Charles W. Throckmorton*

Charles W. Throckmorton
Fla. Bar No. 286192
David L. Rosendorf
Fla. Bar No. 996823
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL   33134
Telephone:  (305) 372-1800
Facsimile:  (305) 372-3508
cwt@kttlaw.com
dlr@kttlaw.com
Counsel For BTB Refining, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served (i) via the Court's CM/ECF notification to those parties who are registered CM/ECF participants in this case and/or (ii) via U.S. mail to all parties on the attached service list on this 6day of August, 2014.

By: /s/ Charles W. Throckmorton
    Charles W. Throckmorton

16