CAUSE NO. 2013-38405

| | | |
|---|---|---|
| BTB REFINING, LLC, § | | IN THE DISTRICT COURT |
|    Plaintiff § | | |
| § | | |
| v. § | | |
| § | | OF HARRIS COUNTY, TEXAS |
| § | | |
| TRIGEANT, LTD., TRIGEANT, L.L.C., § | | |
| STEPHEN ROOS, HARRY § | | |
| SARGEANT, JUNIOR, DANIEL § | | |
| SARGEANT, and JAMES SARGEANT § | | 165TH JUDICIAL DISTRICT |

### PLAINTIFF'S FIRST AMENDED PETITION

Plaintiff BTB Refining, LLC ("BTB") files this First Amended Petition Defendants Trigeant, Ltd., Trigeant, LLC (collectively Trigeant, Ltd. and Trigeant, LLC are referred to herein as "Trigeant"), Stephen Roos ("Roos"), Harry Sargeant Junior ("Sargeant Junior"), Daniel Sargeant, and James Sargeant (collectively referred to as "Defendants") as follows:

## I.
## DISCOVERY PLAN / AMOUNT IN CONTROVERSY

1. In this action, BTB seeks monetary relief over $1,000,000. Pursuant to Rule 190.4, BTB intends that discovery be conducted under Level 3 in this action.

## II.
## PARTIES

2. Plaintiff BTB Refining, LLC is a limited liability company formed under the laws of the state of Texas.

3. Defendant Trigeant, Ltd. is a limited partnership formed under the laws of the State of Florida that is doing business in Texas. Defendant Trigeant, Ltd. has already been served with process and may, therefore, be served with this amended petition pursuant to Tex. R. Civ. P. 21 & 21a.

1

4.    Defendant Trigeant, LLC is a limited liability company formed under the laws of the state of Florida. Defendant Trigeant, LLC is the general partner of Trigeant, Ltd. Defendant Trigeant, LLC has already been served with process and may, therefore, be served with this amended petition pursuant to Tex. R. Civ. P. 21 & 21a.

5.    Stephen Roos is an individual who is a resident of the state of Florida. Stephen Roos is the manager of Trigeant, LLC, which is the general partner of Trigeant, Ltd., and has engaged in conduct, including the conduct complained of in this petition, either in Texas or purposefully directed toward Texas. Stephen Roos has already been served with process and may, therefore, be served with this amended petition pursuant to Tex. R. Civ. P. 21 & 21a.

6.    Harry Sargeant Junior is an individual who is a resident of the state of Florida. Harry Sargeant Junior is the manager of Trigeant Holdings, LLC, which is the general partner of Trigeant Holdings, Ltd., which owns substantially all of both Trigeant, Ltd. and its general partner, Trigeant, LLC. As such, Harry Sargeant Junior has ultimate managerial control over Trigeant, Ltd. Moreover, in conjunction with Defendants Daniel Sargeant and James Sargeant, Harry Sargeant Junior has exercised control over the major decisions of Trigeant, Ltd., and engaged in conduct, including the conduct complained of in this petition, either in Texas or purposefully directed toward Texas. Harry Sargeant Junior has already been served with process and may, therefore, be served with this amended petition pursuant to Tex. R. Civ. P. 21 & 21a.

7.    Daniel Sargeant is an individual who is a resident of the state of Florida. Daniel Sargeant is a member of Trigeant Holdings, LLC, and collectively with Defendants Harry Sargeant Junior and James Sargeant, he has exercised control over the major decisions of Trigeant, Ltd., and engaged in conduct, including the conduct complained of in this petition, either in Texas or purposefully directed toward Texas. Daniel Sargeant may be served with process directly

through either personal service or service by certified mail, return receipt requested both at 3020 North Military Trail, Suite 100, Boca Raton, Florida 33431 or at his home address at 2101 Spanish River Rd., Boca Raton, Florida 33432-8552.

8. James Sargeant is an individual who is a resident of the state of Florida. James Sargeant is a member of Trigeant Holdings, LLC, and collectively with Defendants Harry Sargeant Junior and Daniel Sargeant, he has exercised control over the major decisions of Trigeant, Ltd., and engaged in conduct, including the conduct complained of in this petition, either in Texas or purposefully directed toward Texas. James Sargeant may be served with process directly through either personal service or service by certified mail, return receipt requested both at 3020 North Military Trail, Suite 100, Boca Raton, Florida 33431 or at his home address at 258 Venetian Dr., Delray Beach, Florida 33483-6810.

### III.
### JURISDICTION AND VENUE

9. Defendants Trigeant, Ltd., Trigeant, LLC and Roos have done business in the state of Texas regularly and in sufficient quantity to subject them to the general jurisdiction of Texas courts. The conduct of all Defendants described below was purposefully directed toward BTB and its business in Texas, which grants Texas courts specific jurisdiction over all Defendants. Moreover, this Court has subject matter jurisdiction over this action because the matters and amounts in controversy fall within the jurisdiction of this Court.

10. Venue is proper in Harris County, Texas under Tex. Civ. Prac. & Rem. Code § 15.002(a)(1) because it is the county where all or a substantial part of the events giving rise to the claim occurred.

IV.
FACTS

11. Trigeant owned an asphalt refinery that encompassed both real and personal property located in Corpus Christi, Texas ("the Refinery"). Trigeant previously purchased crude oil to process into asphalt from PDVSA Petroleo S.A. ("PDVSA"), resulting in disputes regarding payment for the same. As a result, PDVSA ultimately obtained an arbitration award against Trigeant for nonpayment, and in order to pay the award, in 2006 Trigeant mortgaged the refinery and obtained a loan from American Capital Financial Services, Inc. ("AmCap"). In 2007, Trigeant defaulted on the loan and AmCap posted the Refinery's real property for foreclosure.

12. In December of 2007, BTB, purchased the AmCap loan and mortgage for full value. On March 4, 2008, BTB foreclosed on the real property of the Refinery. The real property that was foreclosed upon in March 2008 encompasses the land and structures at the Refinery. That real property includes but is not limited to storage tanks, a vacuum tower, a truck rack, and other facilities at the refinery that process and refine hydrocarbons from their raw state into a state suitable for use for a specific purpose, such as asphalt. The real property foreclosed upon on March 4, 2008 did not include any personal property at the Refinery. Because Trigeant continued to own such personal property, after the March 2008 foreclosure, BTB entered into an agreement by which Trigeant continued to operate the Refinery on BTB's behalf in exchange for a fee paid by BTB to Trigeant.

13. On September 8, 2008, BTB foreclosed on the personality of the Trigeant Refinery, which encompassed a variety of personal property, including but not limited to permits, rolling stock, tools, automobiles, computers, equipment, supplies, containers, papers, and the "heels" contained in the Refinery's tanks and pipes. Heels are the residual petroleum product that

4

remains in the pipes and tanks of a refinery after petroleum products are stored within the refinery. It is common when a party contracts to store or process petroleum in a refinery that it purchases the heels in the refinery from the previous owner. After the September 2008 personal property foreclosure, BTB assumed exclusive possession and operation of the Refinery.

14. On March 25, 2010, PDVSA Petroleo, S.A. ("PDVSA") filed its Complaint against Trigeant and BTB in the Corpus Christi Division of the Southern District of Texas seeking to avoid as a fraudulent transfer the March 4, 2008 real property foreclosure and enforce a judgment lien against the Refinery ("the Suit"). The Suit did not challenge the September 8, 2008 foreclosure of personal property at the Refinery. On May 21, 2012, the trial of the Suit concluded and on August 7, 2012, the federal court entered its findings of fact and conclusions of law reflecting that the court intended to avoid the foreclosure.

15. In November of 2012, before the federal court issued its final judgment in the Suit, BTB was negotiating a Tank Lease Agreement with Freepoint Commodities Trading and Marketing, LLC ("Freepoint Agreement") in order to generate income to the Refinery in calendar year 2013. The Freepoint Agreement would allow Freepoint to store petroleum product in certain storage tanks within the Refinery. The Freepoint Agreement would provide the Refinery with operating revenue, and allow it to continue operating while BTB sought other profitable contracts that would make use of other storage tanks, and processing facilities at the Refinery.

16. At the time of the Freepoint Agreement, BTB, Trigeant and Freepoint were all aware that, based upon the federal court's findings of fact and conclusions of law, the federal court's final judgment could affect record title to the property. Thus, Freepoint demanded as a condition to its execution that Trigeant acknowledge the Freepoint Agreement to ensure that, should title be restored to Trigeant, including by order of the federal court, Trigeant would not interfere with

5

BTB's ability to fulfill its obligations under the Freepoint Agreement nor would Trigeant interfere with BTB's exclusive rights to payment thereunder.

17. At the same time BTB was negotiating with Freepoint, Trigeant, through its manager Roos, expressed its concern that because it was an admittedly insolvent entity, it had no ability to operate the Refinery should the federal court enter a judgment restoring title to Trigeant. Specifically, Trigeant had no ability to pay employees, maintain appropriate levels of insurance, or accomplish necessary repairs or capital improvements. Additionally, Trigeant did not have the ability to pay for the tangible personal property on which BTB foreclosed on September 8, 2008 and which was required to operate the Refinery. Further, Trigeant would not have been able to operate the Refinery because BTB owned the contractual right to access the Port of Corpus Christi through its ownership of a Dock Use Agreement, an intangible contract right that was foreclosed upon on September 8, 2008. Finally, Trigeant expressed concern that, if it were restored title to the Refinery it could be held liable for any environmental spill or other actionable activity occurring on the Refinery premises.

18. At the same time, BTB wished to pursue the Freepoint Agreement on the condition that it would have access to all of the Refinery's facilities so that it could obtain additional profitable storage and processing agreements with Freepoint as well as others.

19. In reliance upon the representations of Roos, and in order to ensure that the value of the Refinery would not be diminished or destroyed, and in the pursuit of further profitable agreements, on December 5, 2012 Trigeant and BTB entered into an unconditional letter of intent which constitutes a binding lease agreement (the "Lease") to ensure BTB's continued possession and operation of all of the real property of the Refinery. In the Lease, which was drafted to commence on the date title to the Refinery ever re-vested in Trigeant's name, BTB

agreed to indemnify Trigeant for any loss or damage which could arise out of BTB's operational compliance with the Tank Lease Agreement. In reliance upon Trigeant's execution of the Lease, BTB executed the Freepoint Agreement on the same day. The term of the Freepoint Agreement ran through November 30, 2013, but was subject to extension.

20. From the date of the Lease and Freepoint Agreement forward, BTB remained in exclusive possession of the premises and continued to: operate the Refinery, pay its employees, adequately insure the premises against all risks and comply with the terms of the Freepoint Agreement and Lease.

21. On January 14, 2013, the federal court entered its Final Judgment in the Suit voiding BTB's foreclosure of the Refinery and purchase of same at the foreclosure sale, with the effect of re-vesting title to the Refinery in Trigeant subject to BTB's secured lien. Both BTB and PDVSA appealed this Final Judgment to the United States Court of Appeals for the Fifth Circuit (the "Appeal").

22. After the federal court's Final Judgment, BTB and Trigeant, both represented by counsel, commenced negotiations to add additional terms to the Lease, including a more comprehensive indemnity provision. From December 5, 2012 until February 13, 2013, Trigeant ratified the lease agreement in all respects as these negotiations continued. However, on February 13, 2013, Trigeant, in derogation of both the Freepoint Agreement and the Lease agreement, filed a motion with the federal court asking it to award Trigeant exclusive possession of the Refinery and to re-direct payments under the Freepoint Agreement to Trigeant.

23. Ultimately, the federal court did not give Trigeant exclusive possession of the Refinery. Rather, it ruled that BTB should have access to the Refinery for the purpose of fulfilling its obligations under the Freepoint Agreement, but it also ruled that the intent of the Final Judgment

was to return possession of the Refinery to Trigeant. Thus, by breaching its obligations in the Lease and filing its motion in federal court, Trigeant deprived BTB of possession, access, and use of all facilities at the Refinery other than those expressly governed by the Freepoint Agreement. As a result, BTB did not have the ability to enter into processing agreements with Freepoint for the processing of crude stored in the Refinery, or enter into agreements with others, whether for storage or processing of crude.

24. The decision to breach the Lease was made by Sargeant, Junior, Daniel Sargeant, and James Sargeant, acting as the majority of the managers of Trigeant Holdings, LLC, which acted as the general partner of Trigeant Holdings, Ltd. which owned and controlled Trigeant, LLC and Trigeant, Ltd. This breach by Trigeant was executed by Roos, who was the manager of Trigeant's general partner, at the ultimate direction of Sargeant Junior, who was acting as the manager of Trigeant Holdings, LLC.

25. This breach resulted in the very interference which the Lease and the Freepoint Agreement were meant to avoid. As a consequence of Trigeant's acts, and after the cost and expense of two court hearings and Freepoint's threat of suit against BTB, BTB was disposed of exclusive possession of the Refinery, and no longer remained in control of the Freepoint payments.

26. Moreover, in the hearings before the federal court, counsel for Harry Sargeant Junior represented to the federal court that Harry Sargeant Junior, as manager of Trigeant's ultimate parent company, Trigeant Holdings, LLC, was financially ready, willing and able to capitalize the entire operations of the Refinery if Trigeant was restored to possession. However, when the federal court granted Trigeant non-exclusive possession of the Refinery, Harry Sargeant Junior reneged on his representations to the federal court. Instead, during the term of the Freepoint

Agreement, Trigeant abandoned the premises, refused to escrow for taxes for 2013, and refused to pay to insure the property despite being the record title owner, while at the same time controlling the proceeds from the Freepoint Agreement and excluding BTB from the use of the Refinery facilities not governed by the Freepoint Agreement.  While Trigeant paid some operating expenses of the Refinery from the proceeds of the Freepoint Agreement, BTB has had to advance other payments rightfully owed by Trigeant in order to ensure BTB was not in breach of the Freepoint Agreement.

27.    Additionally, Daniel Sargeant and Roos contacted Freepoint in an attempt to circumvent the terms of the Freepoint Agreement, thereby interfering in BTB's contractual relationship with Freepoint, and souring ongoing business relations with Freepoint.

28.    Pursuant to its own terms, the Freepoint Agreement was set to expire at the end of November, 2013.  BTB and Freepoint attempted to negotiate an extension to the Freepoint Agreement; however, as noted above, Trigeant's continued involvement in and co-possession of the Refinery soured the transaction.  Ultimately, the Freepoint Agreement terminated.  Upon such termination, BTB lost its right to non-exclusive possession of the Refinery, and Trigeant gained exclusive possession.

## V.
## CAUSES OF ACTION

### A. Breach of Contract

29.    The letter of intent is a valid, enforceable lease agreement which the parties commenced to perform and which contains all necessary material terms to bind the parties thereto. Trigeant breached the Lease and BTB has been injured as a result of Trigeant's unexcused acts. At all times BTB was, and is, ready willing and able to perform under the Lease.

30.     The Freepoint Agreement is a valid, enforceable contract which the parties commenced to perform and which contains all necessary material terms to bind the parties thereto. Trigeant breached the Freepoint Agreement and BTB has been injured as a result of Trigeant's unexcused acts.

31.     Strictly in the alternative, if the letter of intent does not constitute a binding lease agreement, it is an unconditional promise to enter into such an agreement on the material terms set forth therein and is a valid, enforceable contract. Trigeant breached the letter of intent and BTB has been injured as a result of Trigeant's unexcused acts.

    **B.  Tortious Interference with Contract**

32.     As discussed above, BTB entered into the Freepoint Agreement.  Defendants engaged in willful and intentional conduct, including causing Trigeant to breach the Lease Agreement, their attempts to gain sole possession of the Refinery, their exclusion of BTB from property at the Refinery, their direct contacts with Freepoint to attempt to induce it to breach the Freepoint Agreement, and their attempts to sour Freepoint's relationship with BTB.  These willful and intentional acts of Defendants were calculated to cause damage to BTB in its lawful business. Defendants had actual knowledge of the existence of the Freepoint Agreement and of BTB's interest in it.  These actions by Defendants caused actual damage and loss to BTB, and made the performance of the Freepoint Agreement more burdensome and of less value to BTB.  The actions of Defendants were the proximate cause of BTB's harm.

    **C.  Tortious Interference with Prospective Contractual or Business Relations**

33.     BTB had a reasonable probability of entering into additional contractual relations with Freepoint and with others.  However, Defendants intentional and willful conduct soured BTB's relationship with Freepoint, and precluded BTB from entering into such contractual relations

with others.  Defendants' conduct was independently tortious, as such conduct constituted fraud and tortious interference with the Freepoint Agreement.  Defendants' conduct resulted in the loss of additional contractual relations with Freepoint, and potentially with others, and therefore, resulted in actual harm and damage to BTB.  Defendants' acts of interference were the proximate cause of BTB's damages.

### D.  Negligent Misrepresentation

34.     Trigeant, through its manager Roos, made representations to BTB in the course of the negotiations leading up to the execution of the Lease and Freepoint Agreement which were materially false and were made for the guidance of BTB in BTB's formulation of the Refinery's business plan for calendar year 2013 and beyond. Defendants did not exercise reasonable care or competence in communicating Trigeant's intent to allow BTB exclusive possession of the Refinery and not to interfere with the Freepoint Agreement. BTB justifiably relied upon these representations which have proximately caused injury to BTB.

### E.  Fraud and Conspiracy

35.     Defendants, aware that BTB was on the verge of successfully negotiating the Freepoint Agreement, knowingly made or caused to be made false representations to BTB that it would continue to allow BTB exclusive possession of the entirety of the premises, and would promise not to interfere with the terms of the Freepoint Agreement in order to induce BTB to execute the Freepoint Agreement which Trigeant could not secure on its own. Defendants made or caused to be made these knowingly untrue representations with the premeditated intention of dispossessing BTB from the premises and stepping into the shoes of BTB by performing BTB's obligations under the Agreement and reaping the financial benefits therefrom, and precluding BTB from

reaping any financial benefits from the Refinery. BTB relied upon these representations and has suffered injury as a result.

36. This fraudulent conduct was committed by a combination of Sargeant Junior, Daniel Sargeant, James Sargeant and Roos who had a meeting of the minds on the object and course of action and committed an unlawful, overt act to further the object and course of action, resulting in injury to BTB. When Sargeant Junior, Daniel Sargeant, James Sargeant and Roos failed in their plan to have the Court allow Trigeant exclusive possession, place all Freepoint monies into Trigeant's control, and effectively "re-write" the Freepoint Agreement allowing Trigeant to step into the shoes of BTB, Sargeant Junior walked away from his representations to the federal court and Trigeant walked away from the Refinery, all to the injury of BTB.

## VI.
## REMEDIES

37. Plaintiff seeks to recover actual damages sustained by Trigeant's breach of contract.

38. Plaintiff seeks to receive its pecuniary losses suffered as a consequence of its reliance on the negligent misrepresentations of Defendants. Additionally, Plaintiff seeks exemplary damages for such negligent misrepresentations.

39. Plaintiff seeks to recover its actual damages that resulted from Defendants' tortious interference and fraudulent conduct including, but not limited to, the benefit of its bargain with Defendants. Additionally, Plaintiff seeks exemplary damages for Defendants' tortious interference and fraudulent conduct.

40. Pursuant to Tex. Civ. Prac. & Rem. Code § 38.001(8), BTB seeks recovery of its reasonable and necessary attorney's fees for pursuing its breach of contract actions described above.

## VII.
## PRAYER

WHEREFORE, Plaintiff BTB Refining, L.L.C. requests that Defendants be cited to appear and answer this Petition, and that on final hearing, Plaintiff have judgment awarding it the following:

(a) Judgment over Defendants on its claims;

(b) Actual damages;

(c) Exemplary damages on its negligent misrepresentation and fraud/conspiracy claims;

(d) Reasonable and necessary attorney fees on its breach of contract claims;

(e) Prejudgment and post-judgment interest;

(f) Court costs; and

(g) Such other relief to which Plaintiff may be justly entitled.

Respectfully submitted,


GARDERE WYNNE SEWELL LLP
600 Congress Avenue, Suite 3000
Austin, Texas 78701
(512) 542-7072
(512) 542-7272 (Fax)

3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
(214) 999-4250
(214)999-3250 (Fax)

By:     */s/ Mark T. Mitchell*
        Mark T. Mitchell
        State Bar No. 14217700
        mmitchell@gardere.com
        Deirdre B. Ruckman
        State Bar No. 21196500
        druckman@gardere.com
        Frederick W. Sultan, IV
        fsultan@gardere.com
        State Bar No. 00797524


**ATTORNEYS FOR PLAINTIFF
BTB REFINING, L.L.C.**

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served upon on all counsel of record, by the method of service indicated below on this the 13th day of June, 2014.

*<u>Via First Class Mail and email:</u>*
Michael G. Terry
mterry@hdbdlaw.com
Hartline Dacus Barger Dreyer, LLP.
800 N. Shoreline, Ste 2000 – North Tower
Corpus Christi, Texas 78401


              */s/Mark T. Mitchell*
              Mark T. Mitchell

Gardere01 - 6461937v.2

# White, Debbie

| | |
|---|---|
| **From:** | No-Reply@eFileTexas.gov |
| **Sent:** | Monday, June 16, 2014 8:09 AM |
| **To:** | White, Debbie |
| **Subject:** | Accepted Filing Notification for Case No. 201338405  () |

This is an accepted filing notification for Case/Envelope: 201338405 ()

Date Submitted: 6/13/2014 4:43:06 PM
Filing Code: Amended Petition
Filing Type: EFileAndServe

Date Accepted: 6/16/2014 8:09:14 AM
Accepted Comment(s): THANK YOU

View Document
This link will remain active for 30 days.

If you need to know what actions happen after the filing is accepted, please contact the court which you are filing.

Do not reply to this email. This message was automatically generated by eFileTexas.gov.
If you need technical assistance, please contact your eFiling Service Provider.