UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

IN RE:

BTB REFINING, LLC,                                        CASE NO. 14-26919-EPK

    Alleged Debtor.                                        Involuntary Chapter 7
_____/

**OMNIBUS REPLY MEMORANDUM IN SUPPORT OF BTB REFINERY, LLC'S MOTION TO DISMISS INVOLUNTARY PETITION AND IN OPPOSITION TO CREDITOR RESPONSES, INCLUDING PETITIONING CREDITORS' MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT**

    BTB Refining, LLC ("**BTB**"), the Alleged Debtor, replies to (i) *Petitioning Creditors' Response to Motion to Dismiss and Motion for Judgment on the Pleadings or for Summary Judgment* (ECF No. 24)("Petitioning Creditors' Response"); (ii) *Response of Sargeant Trading, Ltd.; Daniel Sargeant; James Sargeant, and Harry Sargeant, II to BTB's Motion to Dismiss Involuntary Petition* (ECF No. 25) ("Sargeant Response"); and (iii) *Al-Saleh's Memorandum of Law in Opposition to BTB Refining, LLC's Motion to Dismiss Involuntary Petition* (ECF No. 29)("Al-Saleh Response").

**FACTS**

**The Petition and the Joinders, and the Motion to Dismiss**

    The original petitioning creditors – Sargeant Trading, Ltd.; American Insulation; Cox Tank Const., Inc.; and Rex G. McDonnell, III – commenced this case by filing an involuntary Chapter 7 petition against BTB on July 28, 2014. (ECF No. 1). Subsequent joinders to the involuntary petition were filed by TransMatrix, Inc. (ECF No. 11); Best Commercial Services (ECF No. 20); Harry Sargeant II and James Sargeant (ECF No. 23); and Daniel Sargeant (ECF No. 26).

BTB moved to dismiss the involuntary petition on August 6, 2014 (ECF No. 6) ("Motion to Dismiss"). A hearing on the motion is set for September 19, 2014. (ECF No. 10). BTB incorporates by reference the factual recitations (as updated by the Kirkeide Affidavit, discussed below) and legal argument from the Motion to Dismiss.

This reply, which also constitutes BTB's response to the Petitioning Creditors' summary judgment motion, is supported by the affidavit of Kevin Kirkeide (ECF No. 32)("Kirkeide Affidavit").

## DISCUSSION

### I.     BTB Concedes That There Are Three Eligible Petitioning Creditors

BTB vehemently disputes the bona fides of the participation of Sargeant Trading, Ltd. and the Sargeants[1] in the involuntary petition, as discussed in greater detail below. BTB also disputes the claims of TransMatrix, Inc. (as to liability) and Best Commercial Services (as to amount).

However, BTB does *not* dispute the eligibility of American Insulation, Cox Tank Const., Inc., and Rex G. McDonnell, III, each of whom holds a small claim against it, as petitioning creditors.[2] Thus, while BTB reserves its claims that the Sargeants instigated and joined in the involuntary petition in bad faith, it does not dispute the fact that the petition satisfies the requirements of §303(b)(1).

---

[1] All capitalized terms not specifically defined herein shall have the meaning ascribed to them in the Motion to Dismiss.

[2] As the Petitioning Creditors note, there are small differences in BTB's calculations of the amounts due to Mr. McDonnell and American Insulation, but BTB does not contend that these minor discrepancies create a bona fide dispute as to liability or amount.

The involuntary petition does not fail for want of eligible petitioning creditors. It fails, under the accepted "totality of the circumstances" test, because BTB is generally paying its undisputed debts as they come due.

## II. BTB is Generally Paying its Debts as They Come Due

BTB incorporates the Kirkeide Affidavit by reference. The affidavit demonstrates the following facts:

- There are now 28 remaining unpaid creditors, with claims in the aggregate amount of $1,203,990.69, who either (i) have agreed to pre- or post-petition payment plans with BTB; (ii) are cooperating with BTB while it awaits resolution of its more than $22 million secured claim against Trigeant; or (iii) will be paid in full upon dismissal of this case from funds currently held in trust by BTB's undersigned counsel. *See* Kirkeide Affidavit, Exhibits A and B. ***In plain terms, BTB has taken care of 28 creditors***, ***out of its total remaining universe of 34 creditors***.[3]

- All of the lawsuits identified in the Petitioning Creditors' Response are resolved.

- There are no outstanding, unsatisfied judgments against BTB.

- Out of its total remaining universe of 34 creditors, there are 6 "creditors" whose claims are disputed, in the ostensible amount of $6,131,291.42. *See* Kirkeide Affidavit, Exhibit D. There is a bona fide dispute as to all of these claims. Moreover, ***95.5%*** of these disputed claims consist of (i) the vehemently disputed Sargeant Trading Claim ($5,264,002.72), discussed in detail below; and (ii) the claims of the Nueces County Tax Assessor ($545,335.06) and the City of Corpus Christi ($46,581.08), ***which are not personal liabilities of BTB***, and are included here only because they were open, disputed claims on the petition date.[4] This leaves a total of only three other disputed claims totaling $275,372.56, compared to 28 creditors holding $1,203,990.69 of undisputed claims that are resolved through payment, forbearance, or agreed payment plans.

---

[3] In Exhibit C, Schedule 2, to its Motion to Dismiss (ECF No. 6-3), BTB had identified a total of 43 creditors, with aggregate claims of approximately $172,000, to be paid in full upon dismissal. BTB has since paid all but 3 of those creditors (Petitioning Creditors Cox, American Insulation, and McDonnell).

[4] BTB was not the record owner of the refinery on January 1 of the assessment year and is therefore not personally liable for the taxes. In all events, real estate taxes are a first priority lien that would be paid from the proceeds of any sale of the refinery.

By any measure, under the "totality of circumstances" test, BTB is generally paying its debts as they come due. Only disputed debts are – naturally – not provided for.

The most that BTB's opponents can argue is that BTB had not completed its ongoing process of resolving its undisputed claims on the petition date.[5] The Petitioning Creditors ask this Court to "freeze the picture" on the Petition Date and penalize BTB --- with an order for relief --- for its failure to complete its resolution of its undisputed debts before the Sargeants instigated the tactical filing of the involuntary petition. Under the flexible "totality of the circumstances" test, the Court need not and should not do so.

Under § 303 of the Bankruptcy Code, a viable involuntary case requires petitioning creditors who hold *undisputed* claims and a debtor who is not paying *undisputed* debts as they come due. By definition, an involuntary case is a vehicle for protection of *undisputed* creditors, not a device for disputed creditors to use for litigation leverage. Disputed creditors --- such as the Sargeants and Al-Saleh, both discussed below --- have no entitlement on account of their contingent, disputed claims to harm their putative debtor, BTB, by forcing it into bankruptcy.

As the Kirkeide Affidavit reflects, there is no undisputed creditor whose interests require BTB to be in bankruptcy. Conversely, there is no disputed creditor who is entitled to throw BTB into bankruptcy. BTB has a first lien on the Trigeant refinery in an amount exceeding $22 million. No one disputes that this lien is well oversecured. Pursuant to Texas law, BTB has scheduled a foreclosure sale of the refinery for October 7, 2014. BTB is extremely solvent. In

---

[5] As reflected on Exhibit C to the Motion to Dismiss, the undisputed claims that had not been provided for at the time the petition was filed, aggregated approximately $172,000. As reflected on Exhibit B to the Kirkeide Affidavit, that number is now down to less than $56,000.

the unlikely event that any of the disputed creditors ever perfects an enforceable claim against BTB, BTB will have the ability to satisfy such claim.

BTB *is* being affirmatively harmed by being in bankruptcy, as reflected by the manner in which the Sargeants immediately ran to two separate courts to make frivolous arguments that this involuntary case stayed BTB's affirmative claims against Trigeant and its parent entities. *See* Motion to Dismiss at 14; *see also* BTB's Motions for Relief from Automatic Stay (ECF No. 16 in *In re Trigeant Holdings, Ltd.*, Case No. 14-29027-EPK; ECF No. 17 in *In re Trigeant, LLC*, Case No. 14-29030-EPK). And BTB cannot even quantify the many other ways that the mere pendency of the case will necessarily harm it in its ongoing business activities.

The Sargeants instigated this case for improper tactical reasons. Al-Saleh, another disputed creditor, is opportunistically piling on. BTB respectfully requests that the Court put a stop to these tactics now by dismissing the involuntary petition or, alternatively, by abstaining from hearing this case pursuant to § 305 of the Code.

**III.    The Sargeant Claims are Subject to Bona Fide Dispute**

    **A.    The Sworn Sargeant Trading Claim**

Daniel Sargeant signed the original involuntary petition on behalf of Sargeant Trading, Ltd., stating, under penalty of perjury, that BTB owed *Sargeant Trading, Ltd*. $5,264,002.72 (the "Sargeant Trading Claim") for "unpaid asphalt." Sargeant Trading, Ltd. did not check the box, immediately above Daniel Sargeant's signature, requiring disclosure as to whether there had been any transfer of any claim against BTB "to any petitioner."

In its Motion to Dismiss, BTB pointed out, among other things, that Sargeant Trading, Ltd. does not own the Sargeant Trading Claim.  In response, each of the Sargeants filed joinders

to the involuntary petition. Each stated that he received a "deemed distribution" of the Sargeant Trading Claim and each asserted that BTB owes *him* $1,316,000.68.

The Sargeants now state unequivocally that the Sargeant Trading Claim "is now held 75% by the Sargeants." (Sargeant Response at 1, n.1). In the same breath, they equivocally suggest that the Court might "determine" "that the Sargeants intended that Sargeant Trading act as their agent to collect the Sargeant Trading Claim on their behalf," even though no such agency relationship has been disclosed in any of the sworn filings. *Id.* They later suggest that they seek to avoid "confusion" over Sargeant Trading, Ltd.'s "standing." *Id.* at 9, n.11.

Meanwhile, Sargeant Trading, Ltd. has not withdrawn its sworn joinder as an original petitioning creditor with a claim of $5,264,002.72.

Thus, Sargeant Trading is conditionally maintaining its status as a petitioning creditor for $5,264,002.72, while each of the Sargeants unconditionally asserts that he is a petitioning creditor with a claim of $1,316,000.68. As discussed below, even apart from the Sargeants' equivocation over the ownership and amount of the claim, the claim is, in all events, subject to a bona fide dispute. This Court should disregard the Sargeant Trading Claim – in all of its protean and inconsistent manifestations – for purposes of determining whether BTB is generally paying its debts as they come due.

      B.      **The Bona Fide Dispute**

The Kirkeide Affidavit contains a detailed recital of the facts surrounding the Sargeant Trading Claim, which BTB will not repeat here. As reflected in the affidavit, the Sargeant Trading Claim for "unpaid asphalt" is inextricably bound to other Sargeant family transactions. It does not stand alone, and BTB's defenses to the claim are not mere independent setoff claims that the Court may disregard in deciding whether there is a bona fide dispute. *Cf. In re Vicor*

*Techs.*, 2013 Bankr. LEXIS 1416, *11 (Bankr.S.D.Fla. June 5, 2013). BTB received the asphalt with the express, contemporaneous understanding that the asphalt transfers were being used to pay down earlier loans that had enabled Trigeant to pay off GE Capital and refinance with AmCap. The Kirkeide Affidavit and supporting exhibits demonstrate an "objective basis" for factual and legal disputes as to the validity and amount of the alleged debt. *Vicor*, *supra*.

**IV.     There is a Bona Fide Dispute as to the Al-Saleh Claim**

Al-Saleh is not a petitioning creditor. He has prudently chosen not to aver under penalty of perjury that he holds a claim against BTB that is undisputed as to liability or amount. Thus, the only issue presented by the Al-Saleh Response is whether Al-Saleh's claim is relevant for purposes of determining whether BTB is generally paying its debts as they come due. § 303(h) expressly excludes debts that are disputed as to liability or amount from that inquiry.

There is a bona fide dispute as to Al-Saleh's alleged claim against BTB. His "claim" is therefore completely irrelevant to BTB's motion to dismiss.

Al-Saleh "seeks relief from this Court as a creditor of BTB by virtue of the fact that BTB is the alter ego of [Al-Saleh's judgment debtor, Harry Sargeant III]." (Al-Saleh Response at 1). Al-Saleh does not dispute the fact that he has no judgment against BTB. He does not dispute the fact that he never had contractual privity with BTB. In order to *ever* obtain an allowed claim against BTB, Al-Saleh would have to obtain the extraordinary remedy of piercing the corporate veil. "Under Florida law, … courts are reluctant to pierce the corporate veil, and will do so only in *exceptional cases* where there has been *extreme abuse* of corporate form." *Gov't of Aruba v. Sanchez*, 216 F.Supp.2d 1320, 1362 (S.D.Fla. 2002) (emphasis added) (citing *Dania Jai-Alai Palace v. Sykes*, 450 So.2d 1114 (Fla. 1984). *Accord*, *Maule Industries v. Gerstel*, 232 F.2d 294, 296 (5th Cir. 1956) ("Courts are reluctant to pierce the corporate veil and destroy the important

fiction under which so much of the business of the country is conducted, and will do so only under such compelling circumstances as required such action to avoid protecting fraud, or defeating public or private rights").

Sargeant and BTB have vigorously disputed Al-Saleh's alter ego claim in state court since he first asserted it in August 2013. Al-Saleh's own recitation of the facts (Al-Saleh Response at 2-12), wherein he alleges, *inter alia*, that Sargeant was one of the "masterminds of an elaborate decade-long plan to continuously and systematically defraud Al-Saleh," *id*. at 2, reveals on its face that his contingent unliquidated alter ego claim against BTB is subject to a bona fide dispute. The state court dismissed the previous iteration of Al-Saleh's claims against BTB for legal insufficiency. *See* attached Exhibit A. His claim has yet to advance beyond the preliminary motion stage. See *Supplemental Defendant BTB Refining, LLC's, and Defendant Harry Sargeant, III's Motion to Dismiss Second Amended Fifth Motion for Proceedings Supplementary to Execution Regarding Harry Sargeant, III's Interest in BTB Refining, LLC*, attached hereto as Exhibit B. This motion remains pending in the state court.

Al-Saleh's claim is manifestly subject to a bona fide dispute. The Court should disregard his claim for all present purposes.

V.     **Dismissal or Abstention is in the Best Interests of all Creditors**

Dismissal of this case is in the interest of all creditors. There is no legitimate creditor of BTB whose interests are served by continuation of this case. BTB has provided for payment of *all* undisputed claims against it on terms satisfactory to the holders of those claims. Its first lien position on the refinery, which has a value in excess of $24 million, is more than sufficient to allow it to pay any of the few remaining disputed creditors if they are ever able to prove up their claims. But this Court is not the forum for the resolution of those claims. The remaining disputed

creditors do not need and are not entitled to invoke the jurisdiction of this Court to exert pressure on BTB.

Entry of an order for relief will complicate and impede BTB's efforts to realize on its claim against Trigeant – indeed, as demonstrated in detail in BTB's motion to dismiss, that is the precise reason that the Sargeants have instigated the involuntary petition. Notwithstanding their supposed selfless pursuit of "equality for all creditors," the Sargeants have one objective in this case – to derail BTB's collection of its debt against Trigeant.

The Petitioning Creditors identify various factors that the Court should consider in determining whether to abstain. (Petitioning Creditors' Response at 13-18). These factors weigh in favor of abstention:

1. There are no meaningful "economies or efficiencies of administration" to be gained here. The Sargeants and Al-Saleh have adequate state court forums for their alleged grievances. The Tax Collectors do not have enforceable claims against BTB in any forum. First Insurance Funding has not sued BTB, but could do so in state court. The same is true for the claims of TransMatrix and Best Commercial Services, whose claims are nominal in amount. If this Court grants an order for relief, BTB would be forced to convert to a voluntary Chapter 11 case, and the administrative costs and burdens of that case would grossly outweigh any alleged "economies or efficiencies of administration."

2. All disputed creditors have a suitable alternative state court forum to attempt to establish and enforce their disputed claims.

3. BTB's out-of-court arrangement has provided for *all* of its *undisputed* creditors. The remaining disputed creditors, such as the Sargeants and Al-Saleh, have no standing to complain of "inequality of treatment" --- they have yet to establish that they are entitled to *any* "treatment."

4. As noted in paragraph 1 above, this Court would not be "the only economic and efficient venue." The administrative costs would render it an extraordinarily inefficient venue to deal with the remaining claims asserted against BTB.

5. As discussed above, dismissal is clearly in the interest of BTB and its undisputed creditors, who are the only parties whose interests are implicated by the involuntary petition.

6. There are only six creditors left. "Federal proceedings" with "nationwide service of process" are completely unnecessary.

7. Again, the Sargeants and Al-Saleh have no standing to clamor for an "equitable distribution of assets." BTB is solvent and able to pay them in the unlikely event they establish valid claims.

8. Abstention is not justified by the "purpose for which bankruptcy jurisdiction has been sought." The exact opposite is true: The Sargeants --- who never even sued BTB over the purported "Sargeant Trading Claim" that has been in existence for four years --- have demonstrated by their own conduct that this case was initiated for an ulterior tactical purpose, not to achieve "equality of distribution." If this Court does not dismiss or abstain, it will be rewarding an abuse of its jurisdiction.

## VI. This Court Should Deny the Petitioning Creditors' Motion for Summary Judgment

The Kirkeide Affidavit and its exhibits evidence that this Court should dismiss this case or abstain from hearing it. At a minimum, it demonstrates the existence of genuine issues of material facts relative to the bona fide dispute of the Sargeant Trading Claim and the Petitioning Creditors' contention that BTB is *not* generally paying its debts as they come due. Accordingly, this Court should deny the Petitioning Creditors' motion for summary judgment on the involuntary petition.

### CONCLUSION

This Court should dismiss the involuntary petition. Alternatively, it should abstain from hearing this case. This Court should deny the Petitioning Creditors' motion for summary judgment. It should grant judgment against the Sargeants, jointly and severally, for BTB's costs and attorneys' fees incurred in defending this involuntary petition. It should establish a briefing and discovery schedule on BTB's motion to assess actual and punitive damages against Sargeant

Trading and the Sargeants, and any persons found to be acting in concert with them, for actual and punitive damages for filing this involuntary petition in bad faith.

DATED:  September 11, 2014       Respectfully submitted by:

*/s/ Charles W. Throckmorton*

Charles W. Throckmorton
Fla. Bar No. 286192
David L. Rosendorf
Fla. Bar No. 996823
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL   33134
Telephone:  (305) 372-1800
Facsimile:  (305) 372-3508
cwt@kttlaw.com
dlr@kttlaw.com

**COUNSEL FOR BTB REFINING, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served (i) via the Court's CM/ECF notification to those parties who are registered CM/ECF participants in this case and/or (ii) via U.S. mail to all parties on the attached service list on this 11th day of September, 2014.

By: /s/ Charles W. Throckmorton
Charles W. Throckmorton